UNITED STATES BANKRUPTCY COURT

IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SCOTT DESERT SHADOWS, LLC, | In Chapter 11 Proceedings |
| | Case No. 05-14892-PHX-CGC |
| Debtor. | Adv. No. 06-00003 |
| | UNDER ADVISEMENT DECISION RE: MOTION TO QUASH LIS PENDENS |
| TPG of Scottsdale, LLC, | |
| Plaintiff, | |
| v. | |
| SCOTT DESERT SHADOWS, LLC, an Arizona limited liability company; MICHAEL F. DIESSNER and JANE DOE DIESSNER, husband and wife; FOOTHILL SHADOWS ASSOCIATES, an Arizona limited partnership; BRICE SAMUEL and JANE DOE SAMUEL, husband and wife; ROBERT and JANE DOE BRUNO, husband and wife; HENDRICKS & PARTNERS, INC., an Arizona corporation, | |
| Defendants. | |
| SCOTT DESERT SHADOWS, LLC, an Arizona limited liability company, | |
| Complainant, | |
| v. | |
| FOOTHILL SHADOWS ASSOCIATES, an Arizona limited liability partnership; BRICE SAMUEL, an individual residing in Arizona; ROBERT BRUNO, an individual residing in Arizona, | |
| Cross-Defendants. | |

Case 2:06-ap-00003-CGC    Doc 39    Filed 04/14/06    Entered 04/14/06 09:20:07    Desc
Main Document    Page 1 of 9

| | |
|---|---|
| FOOTHILL SHADOWS ASSOCIATES, an Arizona limited partnership, | ) ) ) |
| Third Party Plaintiff, | ) ) |
| v. | ) ) |
| MICHAEL F. and JANE DOE DIESSNER, husband and wife; M.F. DIESSNER & COMPANY, an unincorporated entity, | ) ) ) ) ) |
| Third Party Defendants. | ) ) ) |

Before the Court is Defendant Foothill Shadows Associates' ("FSA") Motion to Quash *Lis Pendens* filed by Plaintiff TPG of Scottsdale, LLC ("TPG").

On January 3, 2006, TPG filed a complaint against Defendant FSA, its principal Mr. Samuel, and Mr. Bruno, the broker for Hendricks & Partners, Inc. (The "FSA Defendants") and Debtor Scott Desert Shadows. It filed a *lis pendens* on the same day on real property owned by FSA known as Scottsdale Desert Shadows Apartments. In its complaint, TPG alleged claims of fraudulent inducement, promissory estoppel, negligent misrepresentation, breach of the covenant of good faith and fair dealing, unjust enrichment, reformation, moneys paid by mistake, and conversion. On January 12, 2006, Debtor answered and filed a cross-claim against the FSA Defendants alleging nine causes of action, including reformation of the Sale Agreement. FSA seeks removal of the *lis pendens* because it improperly clouds title to the property and is preventing FSA from selling the property.

Under Arizona law, a *lis pendens* may be filed and recorded in conjunction with an "action affecting title to real property . . . ." Arizona Revised Statute ("A.R.S.") section 12-1191(A). The parties all agree that in determining whether a *lis pendens* is groundless or otherwise improper, "courts must examine whether there is some basis for concluding that the action meets this definition, and need not – indeed, should not – determine the merits unless such a determination is necessary to the decision." *TWE Retirement Fund Trust v. Ream,* 198 Ariz. 268, 271, 8 P.3d 1182, 1185 (App. 2000). Application of that standard, however, leads the parties to opposite conclusions.

2

Briefly, Debtor agreed to buy the apartment complex at issue from FSA under a written sale agreement executed in April, 2005 (the "Sale Agreement"). Although the sale never closed, Debtor has paid approximately $1.8 million to FSA in deposits over time. In November of 2005, Debtor entered into an Assignment and Assumption of Sale Agreement and Escrow ("Assignment Agreement") with TPG, whereby TPG would become the assignee of all right, title, and interest of the Debtor under Debtor's sale agreement with FSA. The court authorized assumption of the Sale Agreement and assignment to TPG by order dated December 1, 2005. That order provided that the assignment was conditioned on payment of the remaining unpaid purchase price plus any "actual pecuniary loss" suffered by FSA no later than December 30, 2005. The price was not paid; following a hearing, the automatic rejection date was extended until January 13, 2006. Docket #65. Although this complaint was filed on January 3, 2006, no pre-judgment remedy was sought to stay the rejection of the Agreement or otherwise to maintain the status quo. Instead, TPG recorded the *lis pendens* at issue here, based upon its claim that the Assignment Agreement should be reformed as the result of misrepresentations allegedly made by Debtor, the FSA Defendants and others. The apparent goal was to reform the Assignment Agreement to conform to the actual square footage of the complex and, accordingly, to recalculate the price to be paid based on the reformed square footage. Reformation of the underlying Sale Agreement was not sought until the Debtor's cross-claim was filed on January 12, 2006, unaccompanied by a *lis pendens*.

TPG claims that its reformation claim directly affects title to the apartment complex because reformation would allow the sale of the property to TPG pursuant to the Assignment Agreement.[1] If it wins on this claim, it contends it would take title to the property under its reformed Assignment Agreement with Debtor and the Sale Agreement. For these reasons, it argues that its reformation claim affects title to real property.

FSA disagrees, arguing that the Sale Agreement has been, at the least, rejected and, at most,

---

[1]For this theory to be successful, not only would both the Sale Agreement and the Assignment Agreement need to be reformed, but also the Court's Order Authorizing Assumption and Assignment would have to be amended.

3

terminated, such that there is no contract left to reform. TPG and Debtor argue that this analysis goes too far and is really a determination on the merits of TPG's reformation claim.

The Court disagrees. At the heart of TPG's (and Debtor's) argument is that rejection leaves intact the parties' rights to pursue their respective rights under the contract. However, reformation is not a contractual right; it is an extraordinary equitable remedy not easily awarded. Thus, the key substantive issue is whether a rejected contract can be reformed. Only if such a remedy exists can the *lis pendens* stand.[2] To make that determination, the Court must do more than simply scan the complaint for the mere presence of a claim for reformation. Rather, it Court must look a little deeper into the viability of the claim. If the claim unmistakably does not lie in the first instance, then the *lis pendens* must be removed.

Before reaching this key issue, however, it is important to explore other fundamental problems with TPG's position. First, as noted, TPG's complaint does not seek to reform the Sale Agreement. The reason is obvious: it has no standing to reform a contract to which it is not a party. TPG expressly seeks to reform only its Assignment Agreement with Debtor. Reformation of the Assignment Agreement, however, without more, would leave the Sale Agreement between Debtor and FSA as is. Without reformation of the Sale Agreement, the reformed Assignment Agreement would be meaningless. Thus, unless the Debtor prevails on *its* reformation claim, *TPG's* reformation claim gets it nowhere. For these reasons, TPG's claim to reform the Assignment Agreement arguably does not affect title to the apartment complex and would not support the filing of the *lis pendens*; even if the subsequent filing of the cross-claim adequately filled the gap, it is unquestionable that, at the time it was recorded, there was no claim asserted by TPG that affected the title to the property as required by the *lis pendens* statute. For this reason alone, the Court believes the *lis pendens* could be quashed. The party with standing to file a *lis pendens* is Debtor and Debtor has not done so.

With that said, however, TPG's and Debtor's apparent mutual intention is for both the Sale

---

[2] All parties agree that the only claim in either the complaint or the cross-claim that conceivably affects "title to real property" is reformation.

4

Case 2:06-ap-00003-CGC    Doc 39    Filed 04/14/06    Entered 04/14/06 09:20:07    Desc
Main Document    Page 4 of 9

Agreement and the Assignment Agreement to be reformed; the claim to reform the Sale Agreement is now presented through the cross-claim. If the cross-claim were to succeed, TPG's claim for reformation would be immediately ripe. Thus, to conclude that TPG lacks standing here to file the *lis pendens* would unnecessarily prolong this dispute, as Debtor could then file its own *lis pendens* and the parties would be back before this Court arguing the same issue already fully presented – whether a rejected contract under 11 U.S.C. § 365 can be reformed. Thus, the Court finds that the interlocking relationship between TPG's reformation claim and Debtor's reformation claim provides a sufficient connection, albeit slim, for the Court to address this fundamental underlying issue.

This issue appears to be one of first impression. Neither party has presented any case law on point, and the Court likewise has found none. Therefore, this Court will address and decide the matter itself, and concludes that a rejected contract cannot be reformed by a debtor.

The parties all agree that the sale agreement between Debtor and FSA was rejected on January 31, 2006, by Court Order and pursuant to 11 U.S.C. section 365. As a result, the rejection constituted a breach of the sale agreement as of the day immediately preceding the filing of the petition. 11 U.S.C. § 365(g)(1); *see also In re DAK Industries, Inc.,* 66 F.3d 1091 (9th Cir. 1995); *In re Aslan,* 909 F.2d 367 (9th Cir. 1990). Once the stay was lifted, FSA provided written notice to Debtor under the terms of the sale agreement that sale agreement was cancelled and terminated.

Under these facts, FSA argues two grounds upon which this Court should find that there is no contract left to reform. First, upon rejection of the contract, the contract was deemed breached as of the date immediately prior to the filing of the petition pursuant to Section 365(g)(1), such that the rejection "eliminated any of the Debtor's rights and benefits under the Sale Agreement to purchase the property." In a nutshell, after rejection, the collective set of rights represented by the contract were no longer enforceable in their original form and only remained for purposes of determining claims between the parties. Second, rejection of the contract and subsequent lifting of the automatic stay entitled FSA to cancel the sale agreement under Section 6.02 of the sale agreement, which it subsequently did by written notice to Debtor and its counsel on February 2, 2006. This express termination of the sale agreement leaves nothing to reform.

5

Both TPG and Debtor counter that rejection of the contract did not terminate the contract or any of its, or more accurately Debtor's, contractual remedies and fraud and misrepresentation claims. Specifically, TPG points to this Court's January 31, 2006, Order in which it states "notwithstanding the rejection of the Sale Agreement, Debtor's and TPG's contractual remedies and fraud and misrepresentation remedies continue to exist" for the proposition that neither the rejection nor the Court's Order impacted its rights under the contract. And, because of this, FSA's attempt to cancel the contract also is ineffective to deny it the right of reformation.

While this may be true, TPG misses the point. Reformation is not a contractual remedy; it is an equitable one. Therefore, the Court's Order reserving "contractual remedies" did not itself specifically preserve either Debtor's or TPG's reformation claims. Therefore, further inquiry is required.

It is clear that the rejection of a contract is not the same as termination: The parties may still assert contractual rights post-rejection in order to determine compensation for the injured party for the breach arising out of the rejection and to determine claims asserted in the other direction. *See In re OneCast Media*, 439 F.3d 558, 563 (9th Cir. 2006); *Locke v. Milner,* 180 B.R. 245 (Bankr. C.D. Cal. 1995); *In re Bergt,* 241 B.R. 17 (Bankr. D. Ala. 1999); *In re Drexel Burnham Lambert Group, Inc.,* 138 B.R. 687, 703 (Bankr. S.D.N.Y. 1992). However, rejection does relieve both parties from the ongoing obligation to perform under the contract; in the typical lease situation, for example, the debtor lessee is no longer required to pay rent and the third party lessor is no longer required to provide the debtor/lessee with quiet enjoyment of the premises. Indeed, the circumstances where a debtor IS required to perform post-rejection (such as where the debtor is the lessor of real property or the licensor of intellectual property) are expressly set out in the Bankruptcy Code and limited in scope. See Sections 365(h) and (n). Nonetheless, following rejection, the contract continues to define the scope of liability for the injured party and the availability and extent of defenses for the breaching party.

Reformation, however, is not a right or remedy *under the contract*. Reformation is an extraordinary equitable *remedy*. Whatever rights and remedies may be provided to Debtor or TPG

under the contract still exist, whether that be a right to money damages or some other relief.

Viewed in this way, rejection and reformation are mutually exclusive concepts. The rejection of an executory contract by the Debtor is a decision to free the estate from the obligation to perform under the contract. *See Onecast Media, Inc.,* 439 F.3d 558, 563 (9th Cir. 2006). One cannot release itself from its obligations under the contract and then seek to re-obligate itself (and the counter-party) in the next breath.

Here, of course, the Debtor did not actively seek to reject the contract; nevertheless, its actions led to the rejection order–simply put, it knew that by not expressly assuming the contract in a timely manner, it was risking rejection. Rejection preempted the equitable remedy of reformation. The fact that reformation is an inconsistent remedy where a contract has been rejected perhaps explains why this is an issue of first impression. Except under the rarest of circumstances such as this one, when would a debtor allow or request rejection of a contract and then turn around to reform it?

This holding is akin to the holdings of several courts that once a contract is rejected, the equitable remedy of specific performance is no longer available. *See In re Nickels Midway Pier, LLC,* 332 B.R. 262 (Bankr. D.N.J. 2005) (holding that the Bankruptcy Code preempts states law equitable remedy of specific performance); *In re Aslan,* 65 B.R. 826 (Bankr. C.D. Cal. 1986) (stating that "an executory contract for sale of real property can be rejected and the potential action for specific performance will be transformed into a pre-petition claim, which may be discharged in bankruptcy."). The Court's analysis in *Nickels* is instructive. In *Nickels,* the debtor sought to reject an executory contract and the potential buyer of the property objected on several grounds, including the ground that the contract could not be rejected because the buyer would be entitled to specific performance under state law. The court rejected this argument under principles of federal preemption:

> Federal law preempts state law in three situations: "(1) express preemption, (2) field preemption . . . , or (3) conflict preemption." . . . [C]onflict preemption is appropriate if a state law conflicts with a federal law such that "(1) it is impossible to comply with both state law and federal law; or (2) the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

7

*Id.* at 273-74. The court reasonably inferred preemption by the comprehensive nature of the Code and by the fact that "allowing specific performance would obviously undercut the core purpose of rejection under § 365(a)." *Id. (citing Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.,* 756 F.2d 1043, 1048 (4th Cir. 1985) (stating also that Section 365(g)'s "legislative history makes clear that the purpose of the provision is to provide only a damages remedy for the non-bankrupt party."). While these cases involve the flip side of our facts (here, the debtor, and not the creditor, is seeking the equitable remedy), the analysis is the same. Indeed, our facts are stronger in that *Nickels* and *Aslan* each involved an attempt by a counter-party to a contract to preclude a debtor from rejecting the contract. Here, the contract has already been rejected. Allowing reformation would render that rejection ineffective.[3]

For the foregoing reasons, the Court concludes that a claim for reformation cannot lie where the underlying contract has been rejected. As such, TPG's *lis pendens* does not affect title to real property and must be removed forthwith.

Counsel for FSA is to submit a form of order consistent with this Court's decision for signature.

So ordered.

**DATED**: April 14, 2006

CHARLES G. CASE II
UNITED STATES BANKRUPTCY JUDGE

**COPY** of the foregoing facsimilied and/or mailed
this 14th day of April, 2006, to:

OFFICE OF THE U.S. TRUSTEE
230 North First Avenue, Suite 204

---

[3]Because the Court concludes that rejection precludes reformation, it is unnecessary to address whether this contract was terminated by the February 2 letter.

1  Phoenix, Arizona 85003

2  Philip Rudd
   KUTAK ROCK, LLP
3  8602 North Scottsdale Road, Suite 300
   Scottsdale, Arizona 85253
4  Attorneys for Foothill Shadows Associates

5  John R. Clemency
   Juliet L. Speisman
6  Greenberg Traurig, LLP
   2375 E. Camelback Rd., Suite 700
7  Phoenix, Arizona 85016
   Attorneys for TPG of Scottsdale, LLC
8
   Steven N. Berger
9  Kevin Judiscak
   ENGELMAN BERGER, P.C.
10 3636 North Central Avenue, Suite 700
   Phoenix, Arizona 85012
11 Attorneys for Debtor

12
   __/s/ Shirley Dunbar/_____
13 Judicial Assistant

9